*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GOVERNOR GRETCHEN WHITMER,

      Appellant,

v

BOARD OF STATE CANVASSERS and JAMES
MAKOWSKI,

      Appellees.

FOR PUBLICATION
May 27, 2021
9:05 a.m.

No. 354474
Board of State Canvassers
LC No. 00-000000

---

GOVERNOR GRETCHEN WHITMER,

      Appellant,

v

BOARD OF STATE CANVASSERS and BRENDA
LACHAPPELLE,

      Appellees.

No. 354475
Board of State Canvassers
LC No. 00-000000

---

LIEUTENANT GOVERNOR GARLIN
GILCHRIST II,

      Appellant,

v

BOARD OF STATE CANVASSERS and CHAD
BAASE,

      Appellees.

No. 354582
Board of State Canvassers
LC No. 00-000000

---

-1-

GOVERNOR GRETCHEN WHITMER,

        Appellant,

v

BOARD OF STATE CANVASSERS and CHAD
BAASE,

        Appellees.

No.  354583
Board of State Canvassers
LC No.  00-000000

GOVERNOR GRETCHEN WHITMER,

        Appellant,

v

BOARD OF STATE CANVASSERS and JAMES
MAKOWSKI,

        Appellees.

No.  354794
Board of State Canvassers
LC No.  00-000000

GOVERNOR GRETCHEN WHITMER,

        Appellant,

v

BOARD OF STATE CANVASSERS and
MICHAEL GARABELLI,

        Appellees.

No.  354795
Board of State Canvassers
LC No.  00-000000

GOVERNOR GRETCHEN WHITMER,

        Appellant,

v

BOARD OF STATE CANVASSERS and JOHN
PARKINSON,

        Appellees.

No.  354878
Board of State Canvassers
LC No.  00-000000

Before:  JANSEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

JANSEN, P.J.

Each of these seven consolidated appeals[1] as of right call for judicial review, in accordance with the Michigan Election Law, MCL 168.1 *et seq*., as amended by 2012 PA 417.  In each case, the Board of State Canvassers approved for circulation petitions calling for the recall of appellants, Governor Gretchen Whitmer and Lieutenant Governor Garlin Gilchrist II.

In Docket Nos. 354474, 354475, 354583, 354794, 354795, and 354878, Governor Whitmer challenges petitions calling for her recall because of executive orders that she signed that were intended to minimize the impact of the COVID-19 pandemic on the State of Michigan.  We affirm the Board of State Canvassers in the above six cases.  However, in Docket No. 354457, we remand for the ministerial purpose of allowing appellee, Brenda LaChappelle, to correct the scrivener's error in setting forth the date upon which the executive order at issue was signed.

In Docket No. 354582, Lieutenant Governor Gilchrist challenges a petition prepared in response to his having signed, while the Governor was abroad, 2019 HB 4044, resulting in the enactment of 2019 PA 124, which, among other things, amended the criteria for denying, suspending, or placing on probation insurance producer licenses set forth in MCL 500.1239.  We affirm the Board of State Canvassers in this appeal.

I. BACKGROUND

We address each of the petitions filed in turn *infra*.  However, we find it necessary to first give a brief overview of the relevant jurisprudence concerning recall petitions.  Const 1963, art 2, § 8, consists of the following:

> Laws shall be enacted to provide for the recall of all elective officers except judges of courts of record upon petition of electors equal in number to 25 percent of the number of persons voting in the last preceding election for the office of governor in the electoral district of the officer sought to be recalled.  The sufficiency of any statement of reasons or grounds procedurally required shall be a political rather than a judicial question.

The Governor and Lieutenant Governor argue generally that the challenged petitions in these cases did not adequately describe the authorities cited as reasons for the recall.  Those parties rely on *Wallace v Tripp*, 358 Mich 668; 101 NW2d 312 (1960), and *Noel v Oakland Co Clerk*, 92 Mich App 181, 187-188; 284 NW2d 761 (1979).  In *Noel*, this Court, citing *Wallace*, stated that, although "the sufficiency of the reasons in a recall petition is an electoral rather than a justiciable

---

[1] See *Governor Gretchen Whitmer v Board of State Canvassers*, unpublished order of the Court of Appeals, entered January 8, 2021 (Docket Nos. 354474, 354475, 354582, 354583, 354794, 354795, 354878).

-3-

question, . . . the reasons . . . must be stated with adequate clarity . . . to prevent abuse of the elective franchise by ensuring deliberate and *informed* action by those called upon to sign . . . , while . . . affording the official . . . some minimal due process . . . ." *Noel*, 92 Mich App at 187-188, citing *Wallace*, 358 Mich at 676-678; MCL 168.966, repealed by 2012 PA 417.

In *Dimas v Macomb Co Election Comm*, 248 Mich App 624, 627-628; 639 NW2d 850 (2001), this Court, citing then-current provisions of the Michigan Election Law, stated:

> The standard of review for clarity of recall petitions has been described as both "lenient," and "very lenient." Thus, recall review by the courts should be very, very limited. A meticulous and detailed statement of the charges against an officeholder is not required. It is sufficient if an officeholder is apprised of the course of conduct in office that is the basis of the recall drive, so that a defense can be mounted regarding that conduct. Where the clarity of the reasons stated in the petition is a close question, doubt should be resolved in favor of the individual formulating the petition. [Selected quotation marks and citations omitted.]

Similarly, in *Donigan v Oakland Co Election Comm*, 279 Mich App 80; 755 NW2d 209 (2008), this Court held that "truth itself is not a consideration in determining the clarity of recall petition language," because "[s]uch a determination is a political question for the voters, not the courts," and further held that the "same principle applies with regard to whether the language of the petition sufficiently explains the nature of any legislation referred to within it." *Id.* at 83-84 (quotation marks and citations omitted).

After *Dimas* and *Donigan* were issued, the Legislature enacted 2012 PA 417, which modified various provisions of the Michigan Election Law, and added to it MCL 168.951a. The latter's Subsection (1) sets forth the requirements for a recall petition, including, under Subdivision (c), that it "[s]tate factually and clearly each reason for the recall," and that each reason "be based upon the officer's conduct during his or her current term of office," and adds that "[i]f any reason for the recall is based on the officer's conduct in connection with specific legislation, the reason for the recall must not misrepresent the content of the specific legislation." Subsection (2) requires submission of such a petition to the Board of State Canvassers. Subsection (3) calls for the Board to meet and "determine . . . whether each reason for the recall stated in the petition is factual and of sufficient clarity to enable the officer whose recall is sought and the electors to identify the course of conduct that is the basis for the recall," and, if answering any of those questions negatively, to reject the entire petition. Subsection (6) states that "[t]he determination by the board of state canvassers may be appealed" to this Court "by the officer whose recall is sought or by the sponsors of the recall petition drive."

An article in the Michigan Bar Journal summarized some of the effects of the new legislation:

> On December 27, 2012, Public Act 417 took immediate effect, substantially changing the way in which elected officials are recalled in Michigan. The amendments clarify and make more uniform the process for recalling elected officials. Uniformity is accomplished by creating consistency in interpretation, placing recalls for all statewide (and some county) officeholders before the same

-4-

body, requiring that the reasons stated for the recall be factual, and specifying the periods during which a recall petition may be circulated, precluding multiple, simultaneous recall petitions, etc.

To address concerns regarding inconsistent application of the Michigan Election Law, the 2012 amendments now require petitions seeking the recall of public officials to be submitted to the Board of State Canvassers before being circulated. The board is a constitutionally created commission responsible for canvassing petitions and election results, conducting recounts, and administering elections in Michigan. . . .

The 2012 amendments also added a factuality requirement so that a petition must now state the reasons for recall both "factually and clearly." Although the grounds for recall remain a political question, for the sake of avoiding voter confusion in the present climate of relentless (and often intentionally misleading) political advertisements, the legislature commanded that the ballot language itself must be both factual and clear. [Hanselman, *Total Recall: Balancing the Right to Recall Elected Officials with the Orderly Operation of Government*, Mich Bar J (January, 2014), p 36 (citations and footnote omitted).]

This Court has held that "the Legislature included the terms 'factual' and 'factually' in MCL 168.951a to ensure that the grounds set forth in a recall petition are stated in terms of a factual occurrence." *Hooker v Moore*, 326 Mich App 552, 555; 928 NW2d 287 (2018). Although the statute requires that a reason for recall "be stated in the form of a factual assertion about the official's conduct," it "does not specify . . . however, that the reason for the recall stated in the petition must be truthful." *Hooker*, 326 Mich App at 559. This is because such inquiry involves the sufficiency or validity of the reason stated, which our state Constitution "plainly reserves . . . to the electors." *Id.* at 559, citing Const 1963, art 2, § 8.

These consolidated appeals occasion further application of the Michigan Election Law, as amended by 2012 PA 417.[2]

## II. STANDARD OF REVIEW

"[A]n elected officer whose recall is sought may appeal a determination by the Board [of State Canvassers] in this Court for a determination concerning whether the reasons stated in the petition are factual and of sufficient clarity." *Hooker*, 326 Mich App at 555, citing MCL 168.951a(6). We acknowledge that the Governor and the Lieutenant Governor have asked this Court to "clarify and confirm the standard of review applicable to recall petitions after the 2012 amendments to the Michigan Election Law[.]" We agree that the standard of review requires clarification, and now confirm that this Court reviews questions of clarity of reasons presented in recall petitions de novo, consistent with the appellate standard of review for the existence of ambiguity in statutory language, *Hooker*, 326 Mich App at 558-559, or in contractual language.

---

[2] The Michigan Election Law, including certain provisions of 2012 PA 417, was also amended by 2018 PA 190, but not in ways bearing on any of the issues raised in these appeals.

See *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 39; 892 NW2d 794 (2017). Additionally, we confirm that the issue of misrepresentation of legislation, or other textual authority, presents a factual question that we review for clear error. See MCR 2.613(C).

## III. ANALYSIS

## A. DOCKET NO. 354474

In Docket No. 354474, James Makowski submitted a recall petition to the Board of State Canvassers to recall the Governor, citing the fact that "Gretchen Whitmer issued Executive Order 2020-143 on July 1, 2020 closing indoor service at bars." On appeal, the Governor argues that "while the reason stated in the [p]etition is stated as a fact, the Board [of State Canvassers] erred in concluding that the stated reason was sufficiently clear, did not misrepresent the content of the executive order referenced in the [p]etition, and described a course of conduct by Governor Whitmer." Thus, according to the Governor, the Board of State Canvassers erred by approving the subject recall petition for circulation.

Executive Order 2020-143 is subtitled "Closing indoor service at bars." It summarizes the history of related executive orders, including judicial challenges, invokes statutory and constitutional authority for each executive action, and recites continuing concerns for the spread of COVID-19. The order then states:

> this order closes bars and nightclubs for indoor service in those regions that are in Phase 4 of the Michigan Safe Start Plan. Restaurants can remain open for indoor service, but alcohol can be served only to patrons who are seated at socially distanced tables. Common areas where people stand and congregate within restaurants must be closed. Restaurants and bars may remain open for outdoor seating, but only for seated customers at socially distanced tables.

The order then sets forth several enumerated paragraphs of particulars regarding restrictions imposed and facilities or services implicated. Executive Order 2020-143 was rescinded by Executive Order 2020-160 on July 31, 2020.

The Governor first argues that the petition lacks clarity because it uses ambiguous and undefined terms, particularly with its reference to "bars." The Governor argues that the word "bars" is ambiguous because dictionaries define the term not only as an establishment that sells alcoholic beverages, but also as a counter at which food or beverages are served, or a shop that sells nonalcoholic beverages, such as coffee. The Governor maintains that where "electors are left to guess at [the] type of 'bar' the [p]etition refers to, the [p]etition lack[s] sufficient clarity and is noncompliant with the Michigan Election Law." We reject this argument. Any person invited to sign the petition would very likely envision a reference to a conventional tavern, where people can purchase and consume alcoholic beverages, when faced with the wording, "closing indoor service at bars." This is particularly so when the word is taken in context, used as it is in connection with the related terms "nightclubs" and "restaurants," strongly suggesting that the term "bars" refers to an establishment, like a nightclub and like many restaurants, that serves alcoholic beverages.

The Governor next argues that the petition language misrepresents Executive Order 2020-143 by stating only generally that the order closed indoor service at bars, when in fact the order was much more particular in its scope. Indeed, MCL 168.951a(1)(c) states that, "[i]f any reason for the recall is based on the officer's conduct in connection with specific legislation, the reason for the recall must not misrepresent the content of the specific legislation." However, this appeal, and with the exception of Docket No. 354582, all the other consolidated appeals, involve executive orders–not legislation.

Recently, albeit in an unpublished, and thus nonbinding[3], opinion, this Court concluded as follows: "We hold that MCL 168.951a(1)(c) does not apply to the executive order descriptions because they are not legislation." *Governor v Bd of State Canvassers*, unpublished per curiam opinion of the Court of Appeals, issued December 3, 2020 (Docket No. 353878). We agree with this Court's previous determination, and affirm it now. We specifically affirm the following conclusion of this Court:

> Although certain limited executive orders effectively become legislation when the Legislature does not timely object, *Aguirre v Michigan*, 315 Mich App 706, 715 n 4; 891 NW2d 516 (2016), those are limited to executive orders transferring powers between executive branch departments, or creating new departments. Const 1963, art 5, § 2. See *Mich Mut Ins Co v Dir Dep't of Consumer and Indus Servs*, 246 Mich App 227, 236-237; 632 NW2d 500 (2001). The listed executive orders did not transfer statutory duties amongst executive departments, and were not issued pursuant to Const. 1963, art. 5, § 2. [*Governor v Board of State Canvassers*, unpub op at 4 n 1.]

Thus, we conclude that Executive Order 2020-143 is not legislation, and therefore is not subject to the requirements found in MCL 168.951a(1)(c). Accordingly, we reject the Governor's challenge to the petition on the basis that the petition contains misrepresentations of the scope of Executive Order 2020-143.

Finally, the Governor argues that the petition fails to put forth a valid reason for the recall because it describes only a single act, and not a course of conduct. Again, we disagree. MCL 168.951a(3) provides, in relevant part, that the Board of Canvassers must "determine . . . whether each reason for the recall stated in the petition is . . . of sufficient clarity to enable the officer whose recall is sought and the electors to identify the course of conduct that is the basis for the recall." The Governor argues that "the Legislature did not require mere 'conduct'," but rather "a 'course of conduct' with respect to recall petitions, meaning that a single action (such as the signing of one executive order) would not meet the requirements of the Michigan Election Law."

In support of her position, the Governor points to the aggravated stalking statute, MCL 750.411i(a), which defines a "course of conduct" as "a pattern of conduct composed of a series of

---

[3] See MCR 7.215(C)(1), which provides that unpublished decisions of this Court are not precedentially binding under principles of state decisis. They may, however, be consulted as persuasive authority. *Hicks v EPI Printers, Inc*, 267 Mich App 79, 87 n 1; 702 NW2d 883 (2005).

-7-

2 or more separate noncontinuous acts evidencing a continuity of purpose." However, we conclude that the Criminal Code's definition of stalking, which by its nature involves more than an isolated unwelcome gesture, is not instructive or conclusive in the present application.

Indeed, MCL 168.951a(1)(c) includes, among the requirements for a recall petition, that the stated reasons for recall must be "based upon the officer's conduct during his or her current term of office" and recognizes that such a reason may be "based on the officer's conduct in connection with specific legislation," implying no need to distinguish an isolated act from a series of actions. Accordingly, we conclude that targeted "conduct" for that purpose may be a course of conduct, or a single action. Further, because MCL 168.951a(3) refers to Subsection (1) in the course of directing the Board of State Canvassers to review petitions for conformance with Subsection (3), we will not add to those requirements. See *Ally Fin Inc v State Treasurer*, 502 Mich 484, 493; 918 NW2d 662 (2018) (statutory interpretation requires examination of the statute "as a whole, reading individual words and phrases in the context of the entire legislative scheme," and therefore this Court must consider the text "in view of its structure and of the physical and logical relation of its many parts") (quotation marks and citations omitted). On the basis of the foregoing, we conclude that the term "course of conduct" as used in Subsection (3) is neither a limitation on grounds for recall, nor a requirement for petition language. Rather, the requirement that the Board of State Canvassers review the reasons stated in recall petitions for clarity is broadly worded in order to cover a succession of related actions along with individual actions.

Moreover, we briefly note the Governor's argument that the signing of a single executive order constitutes a single act, as opposed to a course of conduct, and thus cannot be the basis for a recall petition, would mean reading the challenged petition language so literally as to exclude from consideration any action that the Governor took in connection with the issuance of the order cited but for signing her name (e.g., research, consultations, or deliberations leading up to the signing of the order). If the use of the term "course of conduct" in MCL 168.951a(3) disqualifies isolated actions as legitimate reasons for a recall, presumably few of a governor's official acts would qualify, and such a result cannot stand.[4]

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

### B. DOCKET NO. 354475

In Docket No. 354475, Brenda LaChappelle submitted a recall petition to the Board of State Canvassers to recall the Governor, citing Executive Order 2020-38. The sole reason provided by LaChappelle for recalling the Governor was that "Gretchen Whitmer signed [E]xecutive [O]rder 2020-38 (Covid-19) on April 1, 2020." On appeal, the Governor raises several of the same arguments we rejected *supra* in Docket No. 354474.

---

[4] Additionally, were we to accept the Governor's position that a single act does not constitute a "course of conduct" that may form the basis of a recall petition, this would, for example, immunize an elected official who might accept a single bribe from being recalled for that conduct. That cannot be a plausible understanding of the relevant constitutional and statutory provisions.

Executive Order 2020-38 was signed by the Governor on April 5, 2020, and is subtitled "Temporary extensions of certain FOIA deadlines to facilitate COVID-19 emergency response efforts." Executive Order 2020-38 was rescinded by Executive Order 2020-112 on June 11, 2020.

Citing MCL 168.951a(3), the Governor argues that the challenged petition is deficient because it mentions the signing of a single executive order, failing to describe a "course of conduct." The parties also disagree on whether the requirement in MCL 168.951a(1)(c) that a petition referencing specific legislation must not misrepresent that specific legislation extends to executive orders. For the reasons stated *supra*, we reject the Governor's argument that a petition must describe a course of conduct as opposed to an individual act, and conclude that MCL 168.951a(1)(c) does not extend to the executive orders at issue in these appeals.

We do, however, find it necessary to address the Governor's argument that LaChappelle's failure to list the correct signing date of Executive Order 2020-38 violates the requirement of MCL 168.951a(1)(c) that recall reasons be stated "factually." This issue is unpreserved because it was not raised below. However, this Court retains the authority to decide an unpreserved issue if it concerns a question of law and all the facts necessary for its resolution have been presented. *Vushaj v Garm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). Unpreserved claims of error are reviewed for plain error affecting substantial rights. *Cove Creek Condo Ass'n v Vistal Land & Home Development, LLC*, 330 Mich App 679, 696; 950 NW2d 502 (2019).

Indeed, the statute requires that a reason for a recall "be stated in the form of a factual assertion about the official's conduct," but "not . . . that the reason . . . be truthful." *Hooker*, 326 Mich App at 559. Stating that the Governor signed an executive order on a specified date is a factual assertion, whether or not the date specified is correct. The Governor argues that "[t]he effective dates of laws and regulations are a material term," and because the sole reason for recall misstates the signing date of the executive order cited in the petition, it must "be rejected as non-compliant under the Michigan Election Law." We disagree, and conclude that mistaking the date as the first day, instead of the fifth day, of a particular month was not sufficiently wayward to invalidate the petition on the ground that the reason for recall is not clear. Indeed, if the petition had said "on *or about* April 1" instead of "on April 1, 2020," few would be concerned that referring to a date four days ahead of the mark would cause any confusion for the electors or the Governor concerning which executive order, which was correctly identified by its number, prompted the recall petition.

Because a plain error has been exposed, we remand this matter to the Board of State Canvassers for the ministerial task of allowing LaChappelle to correct what should be deemed a mere scrivener's error. See *People v Gioglio (On Remand)*, 296 Mich App 12, 17; 815 NW2d 589 (2012), vacated in part on other grounds 493 Mich 864 (2012) ("This Court is an error-correcting court that has broad authority to take corrective action with regard to lower court proceedings."); MCR 7.216(A)(7)(1) (this Court may "exercise any or all of the powers of amendment of the trial court or tribunal"); MCR 7.216(A)(7)(4) (this Court may permit corrections or additions to the transcript or record); and MCR 7.216(A)(7)(7) (this Court may "enter any judgment or order or grant further or different relief as the case may require.").

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

## C. DOCKET NO. 354583

In Docket No. 354583, Chad Baase submitted a petition to the Board of State Canvassers to recall the Governor, providing as reasons for the recall that the Governor had "sign[ed] Executive Order 2020-04, Declaration of Emergency, on March 10, 2020, and also for signing Executive Order 2020-67, Declaration of state of emergency under the Emergency Powers of the Governor Act, 1945 PA 302, on April 30, 2020." On appeal, the Governor claims that the Board of State Canvassers erred by approving the petition for circulation, arguing that the recall reasons provided do not name the officer whose recall is sought, and do not adequately describe the legislation to which they refer.

First, we reject the Governor's argument that the petition does not adequately describe the legislation to which it refers, because we concluded *supra* in Docket No. 354474 that MCL 168.951a(1)(c) does not extend to the executive orders at issue in these appeals.

We also reject the Governor's argument that the petition did not adequately identify the officer whose recall is sought. The Governor argues that the provision in MCL 168.951a(1)(c) that "[e]ach reason for the recall must be based upon the officer's conduct during his or her current term of office," and the requirement in MCL 168.951a(3) that the Board of State Canvassers determine "whether each reason for the recall stated in the petition is factual and of sufficient clarity to enable the officer whose recall is sought and the electors to identify the course of conduct that is the basis for the recall," require that each reason set forth in a recall petition must independently identify the officer involved. The Governor argues that where she was only identified by name and title in the petition form where it called for that information, but Baase did not repeat her name and title within the wording of the reason for the recall, the petition should have been invalidated. We reject this argument as it is unpersuasive.

Baase used the petition form approved by the Director of Elections. As this Court has previously noted, "[n]othing within MCL 168.951a(3) precludes the Board [of State Canvassers] from considering the information before the word 'reason(s)' when deciding whether the reasons for recall are clear," and that "[e]lectors will read the entire sentence, which includes the officer's name and title," when considering the petition. *Governor v Bd of State Canvassers*, unpub op at 3. Indeed, the approved form was designed to highlight the name and office involved in the recall effort, and not to require unnecessary repetition of that basic information within each separately stated reason for recall. We therefore conclude that the petition is not to be reviewed as narrowly as the Governor suggests, and that the Board of State Canvassers did not err by considering the entire petition when considering whether to approve it.

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

-10-

## D. DOCKET NO. 354794

In Docket No. 354794, Makowski submitted a petition to the Board of State Canvassers to recall the Governor, giving as a reason for the recall:

In April, 2020, Gretchen Whitmer issued Executive Order 2020-50, which required, in part, "A nursing home with a census below 80% must create a unit dedicated to the care of COVID-19-affected residents ("dedicated unit") and must provide appropriate PPE, as available, to direct-care employees who staff the dedicated unit. A nursing home provider that operates multiple facilities may create a dedicated unit by dedicating a facility for such a purpose."

The salient feature of this appeal is that the Governor asserts that some nonsensical or indecipherable characters appear within the petition language: "The Petition, as submitted, only states that Governor Whitmer 'issued Executive Order 2020.' What follows is a series of indiscernible ellipses/dots followed by a quote." The Governor follows this assertion with a graphic representing a detail of her reproduction of the petition, featuring what appears to be a random array of gray dots separating "Gretchen Whitmer issued Executive Order 2020-" and "'A nursing home . . .'." The Board of State Canvassers retorts that "[t]he copy of the recall petition attached to her brief as Exhibit 1, however, does identify the order by number and does not include any ellipses."

For context, we provide a screenshot of the document in question:



It appears that the gibberish of which the Governor complains is but an occasional irregularity bound up with the processing of electronic documents. The Board of Canvassers' own advocacy suggests that it never encountered the puzzling stray characters, and our review of the record in this case turned up no indication that the Board's deliberations were hampered by, or even included any acknowledgment of, any such irregularity. Indeed, when tasked with experimenting with the zoom level, this Court determined that normal prose came into view where gibberish had earlier appeared.

We conclude that although the Governor relied on the appearance of a string of nonsensical characters to support her challenge to the clarity of the petition language, the Governor's hasty conclusion about a word-processing irregularity does not arise often enough to compel reading the petition as featuring some gibberish in place of several normal characters that appear the rest of the time.

The Governor further argues that the petition at issue is deficient because it mentions the signing of a single executive order rather than a course of conduct. The parties also again disagree on whether the requirement in MCL 168.951a(1)(c) that a petition referencing specific legislation must not misrepresent that specific legislation extends to executive orders. For the reasons stated *supra*, we reject the Governor's argument that a petition must describe a course of conduct as opposed to an individual act, and conclude that MCL 168.951a(1)(c) does not extend to the executive orders at issue in these appeals.

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

E. DOCKET NO. 354795

In Docket No. 354795, Michael Garabelli submitted a petition to the Board of State Canvassers to recall the Governor, giving the following as a reason for the recall:

> 1) For signing in April of 2020, Executive Order 2020-50, Enhanced protections for residents and staff of long-term care facilities during the COVID-19 pandemic
> 2) For saying the following regarding a question about the April 15, 2020 rally, "Operation Gridlock," during an April 13, 2020 News Conference on COVID-19: "I hope that as people are looking at social media they are dispelling and taking on the dissemination of demonstrably inaccurate information. I also would just say, I think it is this group is funded in a large part by the DeVos family and I think it's really inappropriate for a sitting member of the United States President's cabinet to be waging political attacks on any governor, but obviously on me here at home."
> 3) For signing in March of 2020, Executive Order 2020-17, Temporary restrictions on on [sic] non-essential medical and dental procedures, which included the following language: "A plan for a covered facility that performs medical procedures should exclude from postponement surgeries related to advanced cardiovascular disease (including coronary artery disease, heart failure, and arrhythmias) that would prolong life; oncological testing, treatment, and related procedures; pregnancy-related visits and procedures; labor and delivery; organ transplantation; and procedures related to dialysis."

On appeal, the Governor claims the Board of State Canvassers erred in approving the petition for circulation because the recall reasons provided do not themselves name the officer whose recall is sought, that the petition does not describe a course of conduct, that the second reason stated in the petition presents a misquotation and otherwise lacks clarity, and because the first and third reasons do not adequately describe the legislation to which they refer.

First, for the reasons stated *supra*, we reject the Governor's argument that a petition must describe a course of conduct, that the petition did not adequately identify the officer whose recall is sought, and conclude that MCL 168.951a(1)(c) does not extend to the executive order at issue in this appeal. Next, we address the Governor's argument that the petition includes misquotations, and otherwise lacks clarity.

-12-

First, the Governor attacks the reasons for the recall petition on the grounds that the petition misquotes what she said at a press conference. The Governor offers this side-by-side comparison:

| *Quote from Transcript* | *Text Included in the Petition* |
|---|---|
| "I also would just say I think this group is funded in large part by the DeVos family. I think it's really inappropriate to, for a sitting number of the United States President's Cabinet, to be waging political tax on any governor. Obviously, I'm me here at home." | I also would just say, I think it is this group is funded in a large part by the DeVos family and I think it's really inappropriate for a sitting member of the United States president's cabinet to be waging political attacks on any governor, but obviously on me here at home. |

The Governor also invites the reader to search for the pertinent audio at https://www.rev.com/blog/transcripts/michigan-governor-gretchen-whitmer-press-conference-transcript-april-13. However, the Governor thus encourages this Court to engage in precisely the sort of review for accuracy that our state Constitution reserves to the electorate. See *Hooker*, 326 Mich App at 559-560, citing Const 1963, art 2, § 8. Accordingly, we decline to entertain this argument on the ground that only the electorate is legally competent to decide such things.[5]

Next, the Governor challenges the clarity of the first recall reason on the ground that, after specifying an executive order and its approximate signing date, "What follows is an indiscernible series of words," such that "[i]t is not clear . . . whether these words are the Petition sponsor's attempts at summarizing the content of Executive Order 2020-50 or something else entirely." In fact, the words thus challenged, "Enhanced protections for residents and staff of long-term care facilities during the COVID-19 pandemic," quote the subtitle of the order verbatim. We conclude that contrary to the Governor's position, the context of those words suggests that they describe the executive order just cited. The Governor additionally argues that this wording lacks clarity because it uses technical terms defined in the specified order, but not in the reason itself. Namely, "long-term care facility," for which Executive Order 2020-50 incorporates by reference a statutory definition, which in turn implicates "home for the aged" and "adult foster care facility" as statutorily defined. We conclude that a reference to the familiar concept of "long-term care facilities" is not rendered unclear when offered as part of the general description of the impact of an executive order, even though the actual legal implementation of the order naturally requires carefully defining the particulars of that general term. Indeed, "long-term care facility" joins such familiar terms as "driving under the influence," "child abuse," and "power of attorney" as not being rendered unclear by the existence of precise statutory definitions that comport with common understandings while refining the terminology for legal application.

The Governor argues that the third reason for recall lacks clarity because of the repetition of the word "on" in its introductory sentence, on the ground that "[i]t is unclear to electors whether the use of 'on' twice is mere accident by the Petition's sponsor or whether it is part of the Executive

---

[5] It furthermore appears obvious to us that the written transcript of the Governor's remarks is error-riddled - "number" vs "member" and "political tax" vs "political attacks" - and that the petition is very likely a more accurate representation of what the Governor actually said.

Order referenced." However, it appears to this Court that the repeated "on" was obviously mere inadvertence, and the typographical error was acknowledged in the proceedings below. Moreover, because in the original petition the sentence wraps around to the next line after the first "on," we cannot conclude that many readers would even notice the repetition. It is likely that any reader who might notice would recognize the obvious inadvertence, without concern for whether the stenographic mishap originated with the petitioner or with the executive order referenced. Regardless, the Governor does not suggest any alternative and misleading reading that would result from thinking the repeated "on" intentional, and we cannot think of any. Accordingly, any reader who might think the repeated "on" intentional might ponder the peculiar usage, but would not glean from it any misapprehension of what is actually being conveyed.[6]

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

F. DOCKET NO 354878

In Docket No. 354878, John Parkinson submitted three petitions to the Board of State Canvassers to recall the Governor, giving as reasons for the recall that the Governor "signed [E]xecutive [O]rder 2020-11 on March 16, 2020[;]" that the Governor "signed [E]xecutive [O]rder 2020-160 on July 29, 2020[;]" and that the Governor "signed [E]xecutive [O]rder 2020-69 on April 30, 2020." On appeal, the Governor claims the Board of State Canvassers erred in approving the petition for circulation because none of the petitions describe a course of conduct, and that the petitions misrepresent by omission the executive orders specified because the petitions only cite the executive order at issue rather than describing the contents of the orders.

On the basis of the reasons provided *supra*, we first reject the Governor's argument that the petitions were deficient for failing to describe a course of conduct. Next, the Governor argues that the petition failed to describe the executive orders in sufficient detail, where only the executive order number is provided, but not any information regarding the content of the executive orders. It is possible that some potential signers would decline to sign the petition in light of the complete lack of information about the substance of the targeted executive orders. However, neither members of the Board of State Canvassers, nor this Court, have been asked to decide whether they personally would be satisfied to sign a petition of such weighty significance when it bears such limited information. In MCL 168.951a(1)(c), the Legislature demanded only that the reasons for recall be presented factually and clearly, and that attendant legislation must not be misrepresented. Accordingly, just as Const 1963, art 2, § 8 leaves the truth behind reasons for recall to the voters to decide, the Legislature has left the sufficiency of the information provided for the potential petition signers to decide. By adding MCL 168.951a to the Michigan Election Law, the Legislature only minimally upgraded the information requirements for recall petitions. MCL 168.951a(1)(c) does not call on petitioners to describe the pertinent legislation or executive order in detail, and

---

[6] The Governor further protests that "without either fixing the error or clarifying that this is part of the Executive Order, the third reason for recall is not sufficiently clear and should result in the entire Petition being rejected." We admit to feeling some astonishment that the Governor's advocate would endeavor to attach so much significance to a repeated preposition.

therefore occasions no revision of the rule that a petition need not "fully explain the nature and effect of the bills at issue." *Donigan*, 279 Mich App at 84. The Governor's insistence that more information is needed than a bare citation of the executive orders at issue implies a duty of elaboration that is without statutory foundation.

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

### G. DOCKET NO. 354582

In Docket No. 354582, Baase submitted a petition to recall the Lieutenant Governor to the Board of State Canvassers, giving as a reason for the recall that the Lieutenant Governor "SIGN[ED] HOUSE BILL 4044 INTO LAW ON NOVEMBER 21, 2019 WHILE GOVERNOR GRETCHEN WHITMER WAS IN ISRAEL." On appeal, the Lieutenant Governor argues that the Board of State Canvassers erred by approving the petition for circulation because the petition does not identify the officer whose recall is sought, the petition fails to describe a "course of conduct" because it only refers to the singular act of signing a piece of legislation, and that the petition does not adequately describe the legislation to which it refers. We disagree.

For context, we note that "HOUSE BILL 4044" refers to 2019 HB 4044, which was signed and enacted into law as 2019 PA 124. Among other things, it amended the criteria for denying, suspending, or placing on probation insurance producer licenses set forth in MCL 500.1239. It also limited the consideration of felony convictions for this purpose to those committed "within 10 years before the uniform application was filed," MCL 500.1239(1)(d), with certain exceptions, and added the criteria now set forth in Subsection (1)(i) and Subsection (2). Thus, the recall petition at issue in Docket No. 354582 does not pertain to the Governor's or the Lieutenant Governor's response to the COVID-19 pandemic.

For the reasons stated *supra*, we reject the Lieutenant Governor's argument that a petition must describe a course of conduct as opposed to an individual act. Likewise, for the reasons stated *supra*, we reject the Lieutenant Governor's arguments that the petition for his recall is deficient because he was only identified in the petition form where it called for that information but not in the wording of the reason for the recall, and that the petition was deficient for failing to describe the contents of 2019 HB 4044.

On the basis of the foregoing, we conclude that the Board of State Canvassers correctly approved the petition at issue in this appeal.

### IV. CONCLUSION

In Docket Nos. 354474, 354475, 354583, 354794, 354795, 354878, and 354582, we affirm. However, in Docket No. 354457, we remand for the ministerial purpose task of allowing LaChappelle to correct the scrivener's error in setting forth the date upon which the executive order at issue was signed. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Michael F. Gadola

-15-